United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CFO RICK INC,<br>Plaintiff,<br>v.<br>MICHAEL YOUNG,<br>Defendant. | Case No. 25-cv-09896-EMC<br>**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br>Docket No. 55 |

This is one of two "CFO Rick" cases. Defendant Michael Young is the managing and majority member of an LLC known as Millwright Holdings ("Millwright"). The minority member Plaintiff Rick Belgarde. In addition to being the minority member of Millwright, Mr. Belgarde was Millwright's CFO, and his separately-owned company, CFO Rick, provided financial and accounting services to Millwright.

At some point, the relationship between Mr. Young and Mr. Belgarde soured, and Mr. Young accused Mr. Belgarde and CFO Rick of engaging in misconduct vis-à-vis Millwright. Mr. Young thus initiated an arbitration against both Mr. Belgarde and CFO Rick. CFO Rick filed the instant case, largely seeking a declaration that it could not be compelled to arbitration. The Court agreed with CFO Rick, but the case did not wrap up immediately thereafter because Mr. Young brought counterclaims (on his behalf and on behalf of Millwright). CFO Rick moved to dismiss the counterclaims, and the Court granted the motion after Mr. Young failed to oppose.

A final judgment has now been entered, and the only matter left to resolve is a motion for attorney's fees filed by CFO Rick. The main reason why CFO Rick seeks fees is because Mr. Young refused to voluntarily dismiss his counterclaims which then led CFO Rick to file a motion

United States District Court
Northern District of California

to dismiss. *See* Mot. at 3 (emphasizing that fees are not being sought just because Mr. Young *filed* counterclaims; fees are sought because the "counterclaims were *maintained* after a written demand for their withdrawal that identified their specific defects . . . and offered a costless exit through dismissal without prejudice, and because, after refusing that demand, Defendant and his counsel then did nothing to prosecute or defend that [counter]claims") (emphasis added). CFO Rick asks for fees pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion for fees.

## I. FACTUAL & PROCEDURAL BACKGROUND

As noted above, CFO Rick filed this lawsuit, seeking a declaration that it could not be compelled to arbitration. Mr. Young moved to dismiss the case and also to compel arbitration. On February 17, 2026, the Court ruled against Mr. Young and directed the parties to meet and confer

> to determine whether they can reach a stipulation on the resolution of this case . . . . A stipulation would save the parties' resources rather than forcing the parties to spend time and money litigating, *e.g.*, a motion by CFO Rick seeking affirmative relief or a judgment on the merits.

Docket No. 31 (Order at 18).

The parties were unable to reach agreement, and thus, on March 6, 2026, Mr. Young filed counterclaims. *See* Docket No. 36 (counterclaims) (asserting claims on behalf of Mr. Young and/or Millwright for breach of contract, conversion, fraud, fraudulent concealment, unjust enrichment, violation of § 17200, trade secret misappropriation, declaratory relief, and accounting/constructive trust). Apparently, Mr. Young was concerned that the counterclaims could be deemed compulsory in nature, and thus he believed he had to assert them in this suit or they would be waived. *See* Docket No. 35 (Def.'s Status Rpt. at 5) (asking the Court to "confirm that the compulsory counterclaim rule does not apply to Young's claims in this action . . . so that Young may pursue those claims in the appropriate forum *without risk of waiver*") (emphasis added).

/ / /

The parties continued to discuss what to do with the counterclaims. In mid-March 2026, Mr. Young suggested that the parties enter a stipulation of some kind, providing for dismissal of the counterclaims but clearly stating that dismissal would not bar him from asserting his counterclaims such as in another forum. *See* Kelly Decl., Ex. A (email). CFO Rick refused to sign a stipulation with such language and noted that it would only sign a stipulation simply stating that the counterclaims were dismissed "without prejudice." *See* Kelly Decl., Ex. B (email and attached proposed stipulation of dismissal). The parties thus were at an impasse.

On March 17, 2026, CFO Rick asked Mr. Young for an extension to respond to the counterclaims. The response was due on March 27, 2026. *See* Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim."). Although the response to the counterclaims was not due for 10 days, CFO Rick essentially gave Mr. Young one day to respond and said, if he did not agree, it would file a motion for an extension of time. *See* Docket No. 40-1 (Rubinstein Decl. ¶ 4(a) ("On March 17, 2026 at 3:03 p.m. (Pacific), Kymberleigh Korpus from my office emailed Defendant's counsel, Nathaniel G. Kelly, requesting that he stipulate to an extension of time to respond to the Counterclaims until May 15, 2026, and also asking Mr. Kelly to confirm by 1:00 p.m. the following day (March 18, 2026) whether he would enter into the requested stipulation (the 'March 17 Email/'). Ms. Korpus' Email also informed Mr. Kelly that if he did not confirm his agreement to such stipulation by 1:00 p.m. on March 18, 2026, that our office would file a Motion to Change Time with the Court . . . .").

Mr. Young failed to respond by CFO Rick's deadline, and thus CFO Rick filed its motion for an extension – specifically, 15 minutes after its imposed deadline. *See* Docket No. 40 (motion). The next day, March 19, 2026, the Court directed the parties to meet and confer on the motion, *see* Docket No. 41 (order), and the parties submitted a stipulation the same day, giving CFO Rick more time to respond. *See* Docket Nos. 42-43 (stipulation and order).

Under the parties' stipulation, CFO Rick had until April 30, 2026, to respond to the counterclaims. CFO Rick ended up filing a motion to dismiss the counterclaims on April 8, 2026. *See* Docket No. 45 (motion). In the ten-page motion, CFO Rick argued, *e.g.*, that there was no

complete diversity with respect to the counterclaims, that Mr. Young lacked standing to pursue claims on behalf of Millwright, that the federal trade secret misappropriation claim was not viable, and that the Court should decline supplemental jurisdiction if the federal trade secret misappropriation claim were dismissed.

Before CFO Rick filed its motion to dismiss on April 8, it made a demand on Mr. Young. Specifically, on March 30, 2026, CFO Rick demanded that Mr. Young voluntarily dismiss the counterclaims. CFO Rick

> identified specific defects in the counterclaims, including the absence of complete diversity over the derivative claims, the lack of standing [on the part of Mr. Young] and entity representation [for Millwright], and the failure of the Defend Trade Secrets Act claim as a matter of law. [CFO Rick] expressly cited 28 U.S.C. § 1927, set a deadline of 5:00 p.m. on April 2, 2026, and sought dismissal without prejudice so that any *valid* claims could be pursued in the [now] pending state court action [that CFO Rick had filed against, *inter alia*, Mr. Young and Millwright[1]].

Rubinstein Decl. ¶ 5 (emphasis added). In short, CFO Rick gave Mr. Young three days to withdraw his counterclaims, notwithstanding the fact that CFO Rick's response to the counterclaims was not due until some four weeks later.

Mr. Young did not respond by CFO Rick's deadline of April 2, 2026. *See* Rubinstein Decl. ¶ 6. Approximately a week later, CFO Rick filed its motion to dismiss on April 8, 2026.

The parties agreed that Mr. Young could have an extension to file his opposition to the motion to dismiss. After Mr. Young failed to file an opposition by the extended deadline, *see* Docket No. 48 (order setting extended deadline of May 14, 2026), CFO Rick filed a statement noting the failure to oppose. *See* Docket No. 49 (statement filed on May 16, 2026). The Court then issued an order to show cause, warning Mr. Young that a failure to respond to the order to show cause could lead to a granting of the motion to dismiss. *See* Docket No. 50 (order). Mr. Young did not file a response to the order to show cause, and so, the Court dismissed the counterclaims. *See* Docket No. 51 (order filed on May 21, 2026). In its order, the Court noted:

---

[1] The state court action was filed in San Francisco Superior Court. *See CFO Rick Inc. v. Millwright Holdings LLC*, No. CGC-26634912. The Court takes judicial notice that CFO Rick filed the state court case on March 16, 2026. The docket sheet for the case indicates that Millwright was served on March 23, 2026, and Mr. Young on March 25, 2026.

United States District Court
Northern District of California

> The dismissal is with prejudice to the extent that the Court shall not permit Mr. Young to pursue the counterclaims in this forum. However, to be clear, the Court has not adjudicated the merits of Mr. Young's counterclaims. The Court expresses no opinion as to whether Mr. Young may pursue his counterclaims in another forum.

Docket No. 51 (Order at 2).

Now that the entire case has been disposed of, CFO Rick asks to be awarded three categories of attorneys' fees:

(1) fees related to CFO Rick's motion to extend time to respond to Mr. Young's counterclaims ($4,761, representing 9 hours of attorney time), *see* Mot. at 9;

(2) fees related to CFO Rick's motion to dismiss Mr. Young's counterclaims ($17,215, representing 31.3 hours of attorney time), *see* Mot. at 8; and

(3) fees related to the pending fee motion ($6,545, representing 11.9 hours of attorney time).[2] *See* Reply at 15.

## II. DISCUSSION

### A. Legal Standard

CFO Rick argues that attorneys' fees should be awarded pursuant to 28 U.S.C. § 1927 or the Court's inherent authority.[3]

#### 1. Section 1927

Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so *multiplies the proceedings* in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).

---

[2] According to CFO Rick, it is not seeking fees for *all* of the work its attorneys did. *See, e.g.*, Reply at 13 (arguing that the fee "request was build conservatively" as it "excludes the time spent preparing the March 30 demand letter itself, excludes entries in which motion work was block-billed with other tasks, and reproduces the time entries verbatim from the firm's invoices").

[3] In his opposition, Mr. Young points out that CFO Rick has not moved for fees pursuant to Federal Rule of Civil Procedure 11 – nor could it because it never followed the safe harbor procedures (although arguably its demand letter accomplished much of the same purpose). In response, CFO Rick correctly notes that Rule 11 is not the only legal basis for fees that a party can invoke.

Only an attorney may be sanctioned under § 1927 (not, *e.g.*, the client or a law firm). *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015). And as indicated by the bolded language above, § 1927 requires that an attorney's "conduct 'multipl[ied] the proceedings' beyond what would have occurred otherwise. This occurs when misconduct delays or extends litigation, requiring additional effort or expense that would not have been necessary." *Weissman v. Cheokas*, No. 23-12527, 2026 U.S. App. LEXIS 17719, at *18 (11th Cir. June 18, 2026).

In addition to the above, "[t]he imposition of sanctions under [the statute] requires a finding of bad faith, which is assessed under a subjective standard." *Pacific Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (internal quotation marks omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). In general, "bad judgment[] or well-intentioned zeal" is not bad faith. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("'Reckless nonfrivolous filings, without more, may not be sanctioned.'"); *Crossfirst Bank v. Vieste Spe LLC*, No. CV-18-01637-PHX-DLR, 2026 U.S. Dist. LEXIS 121279, at *8 (D. Ariz. June 2, 2026) ("The claims Plaintiffs brought, though ultimately unsuccessful, were not so lacking in legal or factual foundation as to permit an inference that counsel pursued them for purposes of unreasonably and vexatiously multiplying court proceedings rather than to vindicate their clients' asserted rights.").

"Fees on fees" may be assessed under § 1927. *See Blixseth v. Yellowstone Mt. Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) ("[W]e conclude that the costs of obtaining sanctions may be included in a sanctions under § 1927.").

2. Court's Inherent Authority

"[S]anctions imposed under the district court's inherent authority require a bad faith finding." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). "[M]ere recklessness, without more, does not justify sanctions under a court's inherent power," but "[s]anctions are available for a variety of types of willful actions, including recklessness when

combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 933-94 (9th Cir. 2001). "[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Id.* at 992.

Sanctions under a court's inherent authority are "compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party 'for losses sustained.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.*

B. <u>Fees Related to CFO Rick's Motion to Extend Time</u>

CFO Rick asks first for fees for the time its attorney spent on CFO Rick's motion to extend time to respond to Mr. Young's counterclaims. According to CFO Rick, its attorney spent 9 hours on the matter, totaling $4,761.

The request for fees is denied. For purposes of § 1927, CFO Rick has failed to show that Mr. Young's attorney vexatiously and unreasonably multiplied proceedings. CFO Rick gave Mr. Young's attorney only one day (technically, a little less than one day) to respond to its request for an extension of time. CFO Rick could easily have given Mr. Young and his attorney more than just one day, especially because its response to Mr. Young's counterclaims was not due for more than a week later. Notably, the same day that the Court directed the parties to meet and confer on the issue of an extension (the Court's order issued just one day after CFO Rick filed its motion to extend), Mr. Young and his attorney promptly agreed to an extension.

The same facts above also establish that Mr. Young and/or his attorney did not act in bad faith and therefore fees are not warranted, whether under § 1927 or pursuant to the Court's inherent authority.[4]

[4] Even if the Court were inclined to grant fees, the fees requested – $4,761 – are not reasonable. It should not have taken 9 hours to do a simple request for an extension of time.

C. Fees Related to CFO Rick's Motion to Dismiss Counterclaims

CFO Rick next seeks the attorneys' fees it incurred for filing its motion to dismiss Mr. Young's counterclaims.

This request for fees – totaling more than $17,000 – is also denied. CFO Rick has not made a sufficient showing of bad faith which is needed for fees to be awarded under § 1927 or pursuant to the Court's inherent authority. There are two reasons why there is an inadequate showing of bad faith.

First, CFO Rick gave Mr. Young only three days after its demand letter (of March 30, 2026) to withdraw his counterclaims. Similar to above, this compressed timeline was not justified, especially given that CFO Rick's response to the counterclaims was not due until several weeks later. Furthermore, CFO Rick's demand letter raised several issues: *e.g.*, whether Mr. Young lacked standing to pursue claims on behalf of Millwright, whether the federal trade secret misappropriation claim was viable, and whether there was supplemental jurisdiction if the federal claim were dismissed). For Mr. Young and his attorney to vet the issues would require more than just three days, particularly as CFO Rick's arguments for dismissal, as presented in its demand letter, were not obviously meritorious.[5] *See In re Girardi*, 611 F.3d 1027, 1064 (9th Cir. 2010) (noting that a party has a duty under § 1927 "to correct or withdraw litigation positions after it becomes *obvious* that they are meritless") (emphasis added); *Schmitzer v. County of Riverside*, 26 Fed. Appx. 701, 703 (9th Cir. 2002) (rejecting defendant's contention that plaintiff's "claims were *so meritless* that the summary judgment process alone constituted an unnecessary multiplication of the proceedings") (emphasis added); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2007 U.S. Dist. LEXIS 97949, at *19-20 (M.D. Fla. Sept. 17, 2007)

[5] For instance, if Mr. Young's counterclaims were deemed compulsory in nature, then there would be supplemental jurisdiction over those counterclaims. *See Oneida Indian Nation v. Phillips*, 981 F.3d 157, 170 n.62 (2d Cir. 2020) ("Phillips's counterclaim, which seeks relief mirroring that sought by the Nation, thus arises out of a common nucleus of operative fact, falling squarely within our supplemental jurisdiction."); *Martin v. Law Offices of John F. Edwards*, 262 F.R.D. 534, 536 (S.D. Cal. 2009) ("Permissive counterclaims encompass 'any claim that is not compulsory' or does not 'arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.' Permissive counterclaims require an independent basis for subject matter jurisdiction.").

(noting that "[t]he Eleventh Circuit has recognized that an award of sanctions under §1927 is appropriate when an attorney fails to abandon a claim and instead goes forward *knowing* that the evidence will not support the claim" – *e.g.*, the appellate court previously held that a "trial court properly sanctioned an attorney who failed to abandon a case when discovery made it *clear* that there were no viable claims alleged in the complaint") (emphasis added).

Second, Mr. Young had a fair reason not to withdraw his counterclaims as demanded by CFO Rick. As the parties had previously discussed in their meet-and-confers, Mr. Young was concerned that, if he withdrew the counterclaims, that would constitute a forfeiture of the counterclaims if those claims were deemed compulsory in nature. Although CFO Rick had agreed to a dismissal "without prejudice" of the counterclaims, that was not a clear agreement that CFO Rick would be willing to give up the argument of forfeiture of compulsory counterclaims.

At the hearing on the fee motion, CFO Rick suggested that, if that was really Mr. Young's concern, he still could – and should – have withdrawn his counterclaims because, *before* CFO Rick even issued its demand letter of March 30, 2026, it had filed suit against Mr. Young and Millwright in state court and served them with the summons and complaint. In other words, there was a forum where Mr. Young and Millwright could assert their counterclaims; *this* forum was no longer necessary. But it was not unreasonable for Mr. Young and Millwright to first ensure that their counterclaims (or rather, as referred to in state court, the cross-complaint) could be filed and then docketed by the state court. Given that their conduct in not immediately dismissing the counterclaims herein was not unreasonable, Mr. Young cannot be said to have acted in bad faith.

The Court did, at the hearing, have some concern as to why Mr. Young did not tell CFO Rick that he was not going to oppose the motion to dismiss once the cross-complaint was actually on file in state court. But as it turns out, Mr. Young's answer and Millwright's answer and cross-complaint were initially rejected by the clerk of the state court (on or about April 24, 2026), which then led CFO Rick to seek entry of default, when then led Mr. Young and Millwright to move to set aside the default so that they could answer and/or file the cross-complaint. The state court did

not grant Mr. Young and Millwright relief until August 5, 2026.[6]

Given the above, there is at least a fair argument that Mr. Young (and Millwright) did not act unreasonably and in bad faith. Mr. Young had a reason why he did not reach out to CFO Rick about not opposing the motion to dismiss the counterclaims; the cross-complaint in state court was still up in the air. At the same time, he had a reason not to substantively oppose the motion to dismiss – *i.e.*, he believed that the state court was the forum to litigate the counterclaims/cross-complaint. To be sure, there is room to argue that the better practice would have been for Mr. Young to reach out to CFO Rick on the motion to dismiss instead of simply staying silent. But given the earlier stalemate where the parties could not agree on a dismissal of the counterclaims and the already bitter litigation in state court, Mr. Young's actions or omissions were not so unreasonable as to constitute bad faith.[7]

D. <u>"Fees on Fees"</u>

Because the Court has concluded above that fees should not be awarded to CFO Rick, its request for "fees on fees" is also denied.

E. <u>Mr. Young's Fee Request</u>

In his opposition brief, Mr. Young states that he is also moving for fees: "Mr. Young is separately moving under Civil Local Rule 7-8 and 28 U.S.C. § 1927 for the fees incurred in opposing this motion." Opp'n at 14. The Court denies this request for procedural and substantive reasons. First, as a procedural matter, Mr. Young cannot make an affirmative motion in his opposition brief. Second, as a substantive matter, even though the Court is denying CFO Rick's fee motion, it is not entirely meritless. Quite frankly, if *both* parties had worked more cooperatively and reasonably, then neither one would have had to incur fees.

/ / /

/ / /

---

[6] The Court takes judicial notice of the state court filings.

[7] As above, even if the Court were inclined to grant fees, the amount sought by CFO Rick is excessive. As one example, the billing records submitted by CFO Rick show that, on March 29, 2026, its attorneys spent about 8 hours on the motion to dismiss the counterclaims – *i.e.*, before CFO Rick made the demand to Mr. Young, on March 30, 2026, to withdraw the counterclaims.

United States District Court
Northern District of California

## III. CONCLUSION

For the reasons stated above, CFO Rick's motion for attorney's fees is denied. This order disposes of Docket No. 55.

**IT IS SO ORDERED**.

Dated: August 23, 2026

EDWARD M. CHEN
United States District Judge